

FILED
2012 Nov-09  AM 10:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER C. RUSH and NELL N. RUSH,** | ) ) ) | |
| **Plaintiffs/Counter-Defendants,** | ) ) ) | |
| **vs.** | ) ) | **Civil Action No. 5:12-cv-0234-CLS** |
| **METLIFE BANK, NATIONAL ASSOCIATION,** | ) ) ) ) | |
| **Defendant/Counter-Plaintiff,** | ) ) ) | |
| **vs.** | ) ) | |
| **CHRISTOPHER C. RUSH, NELL N. RUSH, CHARLES E. RUSH, LAURA D. GIVENS, THE CHRISTOPHER C. RUSH AND NELL N. RUSH LIVING TRUST, and THE CHRISTOPHER C. RUSH IRREVOCABLE TRUST,** | ) ) ) ) ) ) ) ) ) ) | |
| **Counter-Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This action arises from a reverse mortgage issued by MetLife Home Loans, a division of defendant, MetLife Bank, N.A., on property formerly owned by a trust for the benefit of plaintiffs, Christopher C. Rush and Nell N. Rush.  After the property was damaged by a tornado, plaintiffs asserted claims against defendant for breach of contract and conversion on the basis of its failure to release the proceeds of property

insurance to Christopher Rush.[1]  In turn, defendant petitioned for interpleader in order to determine who was entitled to the property insurance proceeds.[2]  Further, defendant sought a declaratory judgment stating that it was entitled to accelerate the debt on the property based on plaintiffs' transfer of the property to a third party in violation of the mortgage agreement.[3]  The case is before the court on defendant's motion for judgment on the pleadings on plaintiffs' claims for breach of contract and conversion, and on defendant's counterclaim for declaratory relief.[4]  Upon consideration, this court will grant the motion.

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure  12(c) provides that, "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c) (2008) (alteration supplied).  "Judgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002) (quoting *Moore v. Liberty National Life Insurance Co.*, 267 F.3d

---

[1] Doc. no. 1 (Complaint).

[2] Doc. no. 7 (Answer and Counterclaim).  Defendant petitioned to interplead the following parties:  Christopher C. Rush, Nell N. Rush, Charles E. Rush, Laura D. Givens, The Christopher C. Rush and Nell N. Rush Living Trust, and The Christopher C. Rush Irrevocable Trust.  *Id.* at 7.

[3] *Id.*  Defendant asserted its claim for declaratory relief against the following parties: Christopher C. Rush, Nell N. Rush, and/or The Christopher C. Rush and Nell N. Rush Living Trust. *Id.* at 16.

[4] Doc. no. 26 (Motion for Judgment on the Pleadings).

1209, 1213 (11th Cir. 2001) (internal marks omitted)).  Stated differently, "[j]udgment on the pleadings is proper when no issues of material fact exist, and the movant is entitled to judgment as a matter of law."  *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996) (alteration supplied).  When reviewing a motion for judgment on the pleadings, the court is required to accept the facts alleged in the complaint as true, and to view them in the light most favorable to the nonmoving party.  *Swerdloff v. Miami National Bank*, 584 F.2d 54, 57 (5th Cir. 1978).[5]

## II.  FACTS AS ALLEGED

MetLife Home Loans, a division of defendant, MetLife Bank, N.A. ("MetLife"), issued a reverse mortgage loan to The Christopher C. Rush and Nell N. Rush Living Trust on September 22, 2010.[6]  The reverse mortgage loan was secured by a mortgage on certain real property that was owned by the Trust, and that was insured either by State Farm Mutual Automobile Insurance Company ("State Farm"), or by Allstate Insurance Company ("Allstate").[7]  The mortgage was recorded on

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[6] Doc. nos. 7 (Answer to Complaint) ¶ 12; 23 (Answer to Counterclaim), at 2.  The Christopher C. Rush and Nell N. Rush Living Trust was established by plaintiffs, Christopher C. Rush and Nell N. Rush, allegedly "to own and control their property and estate and to govern the use of and disposition of their property and estate."  Doc. 7 ¶ 7.

[7] Throughout their complaint, plaintiffs allege that the property was insured by *State Farm*. *See* doc. no. 1 (Complaint) ¶¶ 6, 8, 9.  Although a court is required to accept the facts alleged in plaintiffs' complaint as true, *see Swerdloff v. Miami National Bank*, 584 F.2d 54, 57 (5th Cir. 1978), this court notes that the property insurance checks at issue in this action (discussed *infra*) were issued by *Allstate*.  *See* doc. no. 27-1 (Allstate Draft).  Even so, the identity of the insurer is not

3

October 28, 2010,[8] as executed and delivered by Christopher Rush on behalf of himself and his wife, Nell Rush, and by Rhona Rush, the successor co-trustee and daughter-in-law of Christopher and Nell Rush.[9]

The mortgage agreement contains two provisions that are pertinent to this action.  With regard to insurance, the mortgage agreement states:

> In the event of loss, Borrower shall give Lender immediate notice by mail.  Lender may make proof of loss if not made promptly by Borrower.  Each insurance company is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly.  Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened.[10]

With regard to grounds for acceleration of debt, the mortgage agreement states:

> Lender may require immediate payment in full of all sums secured by this Security Instrument if . . .
>
> (ii)  All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining

---

material to the resolution of MetLife's instant motion for judgment on the pleadings.

[8] Doc. nos. 1 (Complaint) ¶ 5; 7 (Answer to Complaint) ¶ 7; 27-2 (Loan Agreement and Security Instrument).  The Loan Agreement and Security Instrument will be referred to, collectively, as the "mortgage agreement."

[9] Doc. nos. 7 (Answer to Complaint) ¶ 13; 23 (Answer to Counterclaim), at 2.  Christopher Rush was allegedly authorized to act on behalf of Nell Rush because he was granted a power of attorney on April 6, 2006.  Doc. no. 27-4 (Power of Attorney).  Rhona Rush is the widow of Wendell Rush, who is the son of Christopher and Nell Rush, and the brother of Charles Edward Rush (discussed *infra*).

[10] Doc. no. 27-2 (Loan Agreement and Security Instrument) ¶ 3, Exh. B-6.

period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or (c) a life estate in the Property (or retains a beneficial interest in a trust with such an interest in the Property).[11]

On January 31, 2011, Christopher Rush executed a warranty deed on behalf of Nell Rush that transferred the property to Rhona Rush, without informing MetLife of his plans to do so.[12]  Later that day, Rhona Rush executed a warranty deed conveying the property to The Christopher C. Rush Irrevocable Trust.[13]

A tornado struck the property on April 27, 2011, causing $87,000 in damage.[14] In his capacity as a contractor, Christopher Rush either personally repaired the damage, or paid various contractors to do so.[15]  He also apparently submitted an insurance claim for the cost of repair.

MetLife then received a letter, dated May 18, 2011, from  Charles Edward Rush, the son of Christopher and Nell Rush,[16] which informed MetLife of the transfer of the property to Rhona Rush and, subsequently, to The Christopher C. Rush

---

[11] Doc. nos. 7 (Answer to Complaint) ¶ 33; 23 (Answer to Counterclaim) ¶ 33; 27-2 (Loan Agreement and Security Instrument) ¶ 9, Exh. B-7.

[12] Doc. nos. 7 (Answer to Complaint) ¶ 29; 23 (Answer to Counterclaim) ¶ 29; 27-6 (Title Report).

[13] Doc. nos. 7 (Answer to Complaint) ¶ 31; 23 (Answer to Counterclaim) ¶ 31; 27-6 (Title Report).

[14] Doc. no. 1 (Complaint) ¶¶ 6-7.

[15] *Id.* ¶ 7.

[16] As will be seen in the following text, Charles Edward Rush typically uses his middle name, Edward.

Irrevocable Trust.[17]   The letter also stated that the mortgage loan and property transfers had been procured fraudulently, and that Christopher Rush was not entitled to the insurance proceeds from the damage to the property.[18]   More specifically, Edward Rush alleged that Nell Rush had granted a power of attorney to Christopher Rush on April 6, 2006, but that Nell Rush had revised the power of attorney on March 25, 2008, by revoking the appointment of Christopher Rush, and by granting the appointment to Edward Rush.[19]   Because Christopher Rush was divested of power of attorney on March 28, 2008, Edward Rush alleged that Christopher Rush lacked the authority to execute the mortgage loan and property transfer on behalf of Nell Rush in 2010 and 2011.[20]

Christopher Rush received a check for $51,433.49 in property insurance proceeds in or around June of 2011.[21]   The check listed the following parties as

---

[17] Doc. no. 27-3 (Letter Dated May 18, 2011).

[18] Doc. nos. 1 (Complaint) ¶ 15; 27-3 (Letter Dated May 18, 2011).

[19] Doc. nos. 27-4 (Power of Attorney); 27-5 (Alleged Revised Power of Attorney).

[20] Doc. nos. 7 (Answer to Complaint) ¶ 20; 23 ¶ 20.3; 27-3 (Letter Dated May 18, 2011). Plaintiffs argue that the allegations made by Edward Rush have no basis because he is a convicted felon, because he is estranged from his father, Christopher Rush, and because the power of attorney granted to Christopher Rush was revoked when Nell Rush was incompetent and suffering from Alzheimer's disease.   Doc. no. 1 (Complaint) ¶ 15.   Indeed, Nell Rush was alleged to be incapacitated, and was appointed a guardian *ad litem*, in *The Matter of Estate of Nell N. Rush, an alleged incapacitated person*, Case No. 09-414 (Cir. Ct. Marshall County, Ala.).   Doc. no. 7 (Answer to Complaint) ¶ 6.   Because a court is required to accept the facts alleged in plaintiffs' complaint as true, *see Swerdloff v. Miami National Bank*, 584 F.2d 54, 57 (5th Cir. 1978), this court only notes that there existed a controversy over the correct recipient of the insurance proceeds, and does not attempt to determine whether Edward Rush's statements were true.

[21] Doc. no. 1 (Complaint) ¶ 8. Although plaintiffs allege that the check was sent by *State Farm, see id.*, this court notes that the check appears to have been issued by *Allstate*.  *See* doc. no.

payees:  Christopher C. Rush, Nell N. Rush, and MetLife Bank.[22]  Christopher Rush endorsed the check on behalf of himself and Nell Rush, and forwarded the check to MetLife for endorsement and return "in seven to ten days."[23]  Instead of returning the check, however, MetLife endorsed the check and deposited it into an interest-bearing escrow account.[24]

Christopher Rush then received a second check for $23,000 in property insurance proceeds in or around August of 2011.[25]  That check again listed Christopher C. Rush, Nell N. Rush, and MetLife Bank as payees.[26]  Instead of forwarding the second check to MetLife for endorsement, however, Christopher Rush retained the check.[27]  Christopher Rush later explained that he was "waiting to see what [would] be done with the first check."[28]  Christopher Rush was also due to receive a third insurance check for approximately $14,000, which presumably would have listed the same payees.[29]

---

27-1 (Allstate Draft); footnote 7, *supra*.

[22] Doc. no. 1 (Complaint) ¶ 8.

[23] *Id.*  It is not clear from the complaint whether plaintiffs simply believed that the check would be returned within seven to ten days, or whether plaintiffs and MetLife specifically agreed on the seven-to-ten-day time frame.

[24] Doc. nos. 1 (Complaint) ¶ 8; 7 (Answer to Complaint) ¶ 8.

[25] Doc. no. 1 (Complaint) ¶ 9.  Although plaintiffs again allege that the check was sent by *State Farm*, *see id.*, this court notes that the check appears to have been issued by *Allstate*.  *See* doc. no. 27-1 (Allstate Draft); footnotes 7 and 20, *supra*.

[26] Doc. no. 1 (Complaint) ¶ 9.

[27] *Id.*

[28] *Id.* (alteration supplied).

[29] *Id.* ¶ 10.  As of January 23, 2012, the date plaintiffs filed their complaint, the third check

In a letter dated August 31, 2011, and addressed to Christopher Rush, Nell Rush, Edward Rush, and Laura D. Givens,[30] MetLife explained its uncertainty regarding the proper party to receive the insurance proceeds, and requested that each party sign an agreement that was enclosed in the letter, permitting the disbursement of the full amount of the first check for $51,433.49 directly to the contractor, in accordance with MetLife's Reverse Mortgage Checklist for Insurance Claims, which authorized disbursement once the repairs had been completed by a contractor and verified by an inspector.[31]

In response, MetLife received a letter dated September 13, 2011 from Edward Rush, stating that Christopher Rush had fraudulently procured the mortgage loan, and that Edward Rush would not sign the agreement to disburse the insurance proceeds directly to the contractor, either on behalf of himself, or on behalf of Nell Rush, under her allegedly revised power of attorney.[32]  Edward Rush also alleged that the property had been *improved*, as opposed to *repaired*, and that Christopher Rush was seeking to collect the insurance proceeds for himself.[33]

---

was allegedly due to arrive "any day now."  *Id.*  It is not clear from the record whether plaintiffs ever received that check and, if so, what became of it.

[30] Laura D. Givens was appointed the guardian *ad litem* for Nell Rush in *The Matter of Estate of Nell N. Rush, an alleged incapacitated person*, Case No. 09-414 (Cir. Ct. Marshall County, Ala.). Doc. no. 7 (Answer to Complaint) ¶ 6.

[31] Doc. nos. 7 (Answer to Complaint) ¶ 22; 23 (Answer to Counterclaim) ¶ 22; 27-7 (Letter Dated August 31, 2011).

[32] Doc. no. 27-8 (Letter Dated September 13, 2011).

[33] Doc. nos. 7 (Answer to Complaint) ¶ 23; 23 (Answer to Counterclaim) ¶ 23; 27-8 (Letter

On or around October 1, 2011, an attorney demanded that MetLife return the first check.[34]  In a letter dated October 11, 2011, a second attorney demanded that MetLife disburse the full amount of the first check to Christopher Rush, without requiring execution of the agreement to disburse the insurance proceeds directly to the contractor.[35]

In its December 29, 2011 response to the attorneys' demands, MetLife stated that it could not return the first check based on Edward Rush's allegations.[36] Contemporaneously with the filing of its counterclaim for interpleader on March 13, 2012, MetLife deposited the proceeds of the first check, plus the interest on those proceeds, with the court.[37]

## III.  DISCUSSION

### A.  Plaintiffs' Claims for Breach of Contract and Conversion

---

Dated September 13, 2011).

[34] Doc. no. 1 (Complaint) ¶ 13 (alteration supplied).  The complaint states that the demand was "made on behalf of Mr. And Ms. Rush," without specifying whether the attorney who made the demand represented only Christopher Rush, or both Christopher and Nell Rush, and whether the attorney demanded that MetLife return the check to only Christopher Rush, or to both plaintiffs.  *Id.* In a subsequent letter to MetLife regarding the first check, however, an attorney described the individual who made the October 1 demand as "another of Mr. Rush's lawyers."  Doc. no. 27-9 (Letter Dated October 11, 2011).  Further, the complaint does not specify whether the demand was made orally or in writing.

[35] Doc. nos. 1 (Complaint) ¶ 14; 27-9 (Letter Dated October 11, 2011).  The complaint does not state whether the attorney represented only Christopher Rush, or both Christopher and Nell Rush.  Based on the fact that the October 11 letter only mentioned Christopher Rush, and did not mention Nell Rush, it appears that the attorney represented Christopher Rush alone.

[36] Doc. no. 1 (Complaint) ¶ 15.  The complaint does not state whether MetLife responded orally or in writing.

[37] Doc. no. 11 (Notice of Deposit of Funds into the Registry of the Court).

Plaintiffs assert claims against MetLife for breach of contract and conversion on the basis of its failure to release the first check for $51,433.49 in insurance proceeds to Christopher Rush.[38]  MetLife correctly argues that the Alabama Supreme Court has rejected the viability of breach of contract claims against stakeholders in interpleader actions as a matter of law because the act of interpleading the funds at issue automatically negates the "refusal to pay" element necessary to prove such claims.[39]

> By initiating an interpleader action, the stakeholder is admitting that it holds funds that are not its own, but says that it owes those funds to an undetermined party.  "Historically, interpleader was available to protect a party who recognized an indebtedness, *was willing to pay it*, but was only interested in paying it once.  The interpleader procedure affords the payor an opportunity to clothe his disbursement with the protection of a judicial determination."  *Champ Lyons, Jr., Alabama Rules of Civil Procedure Annotated*, vol. 1, p. 344 (2d ed. 1986) (emphasis added).  Because filing an interpleader action is equivalent to the plaintiff's admitting that it is willing to pay the legitimate claimant, an interpleading stakeholder cannot logically be subjected to a claim alleging bad faith refusal to pay, under the circumstances of this case.  As we held in *Stone v. Southland National Ins. Corp.*, 589 So. 2d 1289 (Ala.1991), a stakeholder who interpleads the funds claimed has not refused to pay.  "To the contrary, by interpleading, [the stakeholder] paid to the court an amount that the parties do not dispute is the full amount due, although it did not pay those proceeds to [any particular claimant]."  *Id.* at 1291.

*Monumental Life Insurance Co. v. Lyons-Neder*, 140 F. Supp. 2d 1265, 1270 (M.D.

---

[38] Doc. no. 1 (Complaint).

[39] Doc. no. 26-1 (Brief in Support of Motion for Judgment on the Pleadings on Plaintiffs' Claims), at 11-12.

Ala. 2001) (quoting *Gilbert v. Congress Life Insurance Co.*, 646 So. 2d 592, 594 (Ala. 1994)) (emphasis and alterations in original).

Further, MetLife correctly argues that a district court located in Alabama has rejected the viability of conversion claims against stakeholders in interpleader actions because such stakeholders have no legal duty to elect among adverse claimants.[40]

> "[W]here a stakeholder is blameless with respect to the existence of the ownership controversy, the bringing of an interpleader action protects it from liability to the claimants both for further claims to the stake and for any claims directly relating to its failure to resolve that controversy." *Prudential Insurance Co. v. Hovis*, 553 F.3d 258, 265 (3rd Cir. 2009). That is, the "failure to choose between the adverse claimants (rather than bringing an interpleader action) cannot itself be a breach of a legal duty." *Id.* . . . *This is precisely the dilemma against which the interpleader mechanism offers protection.*

*RBC Bank (USA) v. Holiday Isle, LLC*, Case No. 09-0038, 2009 U.S. Dist. LEXIS 84307, at *9-10 (S.D. Ala. Sept. 14, 2009) (emphasis supplied, alteration in original).

In response, plaintiffs make no attempt to distinguish the cases expressly denying the viability of breach of contract and conversion claims against stakeholders in interpleader actions. Indeed, plaintiffs admit that "MetLife didn't claim the insurance proceeds as its own,"[41] which negates  the "refusal to pay" element necessary to prove a claim for breach of contract under *Monumental Life*, 140 F. Supp. 2d at 1270.[42] Further, plaintiffs object to "the withholding of the funds for 6 months

---

[40] *Id.*, at 14-15.

[41] Doc. no. 30 (Opposition to Motion for Judgment on the Pleadings), at 8.

[42] In an effort to overcome the fact that MetLife did not attempt to keep the funds for itself,

based upon the letter of a convicted felon,"[43] an argument barred by the holding in *RBC Bank*, that a stakeholder need not "resolve the controversy" between adverse claimants to avoid liability for conversion and, presumably, need not evaluate their credibility.[44]  2009 U.S. Dist. LEXIS 84307 at *10.

Plaintiffs' authorities do not apply to this action.  For example, plaintiffs cite a list of cases in which the courts denied motions for judgment on the pleadings *where the record showed a disputed issue of material fact.*[45]  Because plaintiffs have not alleged the existence of any disputed issues of material fact, and because this court has independently reviewed the record and has not identified any such issues, it appears that all material facts are *undisputed.*  Additionally, plaintiffs cite *Brown v. Campbell*, 536 So. 2d 920 (Ala. 1988), for the proposition that "recovery of converted property by the plaintiffs (in this case the filing of the interpleader) does not bar a suit for conversion but merely reduces the damages by the value to the property at the time of

---

plaintiffs make the colorful claim that MetLife "exercised dominion and control in unjustly trying to cover its own rear."  *Id.*  In addition to being legally nonsensical, this contention is obviously inappropriate for inclusion in a formal brief.

[43] *Id.*

[44] Instead of withholding the funds, plaintiffs argue that MetLife should have disbursed them directly to the contractor.  *Id.* at 7.  In their complaint, plaintiffs allege that Christopher Rush, "being a contractor, repaired the damage himself *and/or paid for the repairs to various contractors*."  Doc. no. 1 (Complaint) ¶ 7 (emphasis supplied).  Thus, it is not clear whether plaintiffs argue that MetLife should have disbursed the insurance proceeds to Christopher Rush, or to an unspecified third party or parties.  In order to pay *any* contractor, however, MetLife would have had to "resolve the controversy" between Christopher and Edward Rush, by *accepting* the claims of Christopher Rush, and by *rejecting* the claims of Edward Rush.

[45] Doc. no. 30 (Opposition to Motion for Judgment on the Pleadings), at 5-7.

its return."[46]  *Brown*, however, involved a stock certificate, which fluctuates in value, while this case involves an insurance check, which is for a specific, non-negotiable sum of money.

In sum, plaintiffs' claims for breach of contract and conversion are barred by the holdings in *Monumental Life*, 140 F. Supp. 2d at 1270, and *RBC Bank*, 2009 U.S. Dist. LEXIS 84307 at *10.  Accordingly, MetLife's motion for judgment on the pleadings with respect to those claims is due to be granted.

## C.   Defendant's Counterclaim for Declaratory Relief

MetLife seeks a declaratory judgment against Christopher and Nell Rush and/or The Christopher C. Rush and Nell N. Rush Living Trust stating that MetLife was entitled to accelerate the debt on the property and require full payment of all sums due.[47]  Under the terms of the mortgage agreement, MetLife could require immediate payment if

> (ii)   All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or (c) a life estate in the Property (or retains a beneficial interest in a trust with such an interest in the Property).[48]

---

[46] *Id.* at 8.

[47] Doc. no. 7 (Answer to Complaint), at 17-18.

[48] *Id.* ¶ 33; doc nos. 23 (Answer to Counterclaim) ¶ 33; 27-2 (Loan Agreement and Security

On January 31, 2011, Christopher Rush executed a warranty deed on behalf of Nell Rush that transferred the property to Rhona Rush, without informing MetLife of his plans to do so, and without retaining any interest in the property.[49]  Later that day, Rhona Rush executed a warranty deed conveying the property to The Christopher C. Rush Irrevocable Trust.[50]  Thus, under the plain language of the mortgage agreement, MetLife Bank was entitled to "require immediate payment in full of all sums secured" by the agreement.

In response, plaintiffs argue that they and their attorney consulted a specialist attorney, who advised them that a transfer from The Christopher C. Rush and Nell N. Rush Living Trust to The Christopher C. Rush Irrevocable Trust "would have been a Medicare disqualifying event so a straw man, their widowed daughter-in-law, was used."[51]  Because the property was ultimately transferred to The Christopher C. Rush Irrevocable Trust, plaintiffs note that the property "is still now in a trust for the benefit of Mr. and Ms. Rush."[52]

---

Instrument) ¶ 9, Exh. B-7.

[49] Doc. nos. 7 (Answer to Complaint) ¶ 29; 23 (Answer to Counterclaim) ¶ 29; 27-6 (Title Report).

[50] Doc. nos. 7 (Answer to Complaint) ¶ 31; 23 (Answer to Counterclaim) ¶ 31; 27-6 (Title Report).

[51] Doc. no. 30 (Opposition to Motion for Judgment on the Pleadings), at 10.

[52] *Id.*  Based on the name of The Christopher C. Rush Irrevocable Trust, it is not clear if the trust is, in fact, intended for the benefit of both Christopher and Nell Rush, or for the benefit of only Christopher Rush.  As that issue does not affect MetLife's entitlement to declaratory judgment, however, this court only notes that the property was transferred, and does not attempt to determine the true beneficiary of that transfer.

MetLife correctly argues that it became entitled to accelerate the debt and require immediate payment of all sums due *upon the transfer of the property from The Christopher C. Rush and Nell N. Rush Living Trust to Rhona Rush*, and that the subsequent transfer of the property from Rhona Rush to The Christopher C. Rush Irrevocable Trust is irrelevant.[53]   That interpretation is consistent with the apparent purpose of the acceleration clause:   *i.e.*, to enable MetLife to protect its security interest by preventing the transfer of the property to an individual with whom MetLife lacked privity of contract.

In sum, the mortgage agreement plainly allowed MetLife to accelerate the debt and require immediate payment of all sums due once the property was transferred to Rhona Rush.  Accordingly, MetLife's motion for a declaratory judgment is due to be granted.

## IV. CONCLUSION AND ORDERS

For the reasons explained above, MetLife's motion for judgment on the pleadings on  plaintiffs' claims for breach of contract and conversion, and on MetLife's counterclaim for declaratory relief, is due to be, and it hereby is, GRANTED.   Plaintiffs' claims for breach of contract and conversion are DISMISSED.  Further, this court holds that the transfer of the property from The

---

[53] Doc. no. 33 (Reply in Support of Motion for Judgment on the Pleadings on MetLife's Counterclaims), at 7.

15

Christopher C. Rush and Nell N. Rush Living Trust to Rhona Rush constituted valid grounds for acceleration of the debt, and that MetLife was entitled to require full payment of all sums due.

DONE and ORDERED this 9th day of November, 2012.

_____
United States District Judge